## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BHAJAN BADWAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-cv-2073 (KBJ) |
| | ) | |
| BOARD OF TRUSTEES OF THE | ) | |
| UNIVERSITY OF THE DISTRICT OF | ) | |
| COLUMBIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Bhajan Badwal is a former employee of the University of the District of Columbia who was allegedly forced to retire from his position as a professor in the Department of Psychology and Counseling after a period of illness.  Badwal has filed a six-count complaint in this Court, claiming that Defendant Board of Trustees of the University of the District of Columbia ("Defendant") unlawfully terminated his employment because of his disability and age, in violation of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–796l, the District of Columbia Human Right Act, D.C. Code § 2-1401–2-1431, the Family and Medical Leave Act, 29 U.S.C. §§ 2601–2654 ("FMLA"), and the District of Columbia Family and Medical Leave Act, D.C. Code § 32-501–32-517 ("DCFMLA"), and in breach of his employment contract.[1]  On September 19, 2014, Defendant filed a motion to dismiss the complaint, which this

---

[1] The operative complaint is Plaintiff's Second Amended Complaint, which Badwal filed on September 5, 2014.  (ECF No. 24.)

Court referred to Magistrate Judge G. Michael Harvey for consideration pursuant to Federal Rule of Civil Procedure 72(b).  (*See* ECF Entry dated Feb. 24, 2015.)  On July 20, 2015, Magistrate Judge Harvey submitted to this Court a Report and Recommendation that recommends that Counts I and II be dismissed and that Counts III through VI be permitted to proceed, and thus, that Defendant's motion to dismiss be granted in part and denied in part.  (ECF No. 31.)[2]

Before this Court at present is Defendant's written objection to the Report and Recommendation.  (*See* Def.'s Rule 72(b) Objs. to the R. & R. ("Def.'s Objs."), ECF No. 33.)  Upon consideration of the Report and Recommendation, Defendant's objections, the response of Plaintiff thereto, the briefing on Defendant's motion to dismiss, and the entire record herein, this Court has decided to adopt the findings and conclusions of the Report and Recommendation in full.  Defendant asserts that the Report and Recommendation "applies the wrong standard of review and makes unreasonable inferences to support Plaintiff's conclusory allegations" (Def.'s Objs. at 12); however, this Court concludes that Magistrate Judge Harvey has correctly, clearly, and carefully explained the applicable legal standards, and having reviewed this case *de novo*, this Court finds that it agrees with the entirety of the Report and will adopt its analysis and conclusions as the Court's own.  Accordingly, it is hereby

**ORDERED** that the findings in the Report and Recommendation are **ADOPTED** in total, and Defendant's [25] Motion to Dismiss is **GRANTED IN PART and DENIED IN PART** as recommended and set forth therein.

\*   \*   \*

---

[2] The Report and Recommendation is attached to this Order as Appendix A.

2

The Court takes this opportunity to opine further as follows on two particularly problematic aspects of Defendants' objection that warrant additional discussion.  First, it is clear that, throughout its written objection, Defendant has improperly substituted the legal standard that applies to motions for summary judgment for that which governs consideration of a motion to dismiss.  It is clear beyond cavil that a Rule 12 motion tests the sufficiency of the allegations of the complaint, which must be taken as true, in light of Rule 8(a)'s notice requirement and the elements of the alleged claim, *see Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002), whereas Rule 56 requires the court to examine the evidence both parties have gathered and determine whether there is any genuine issue of material fact for a jury (*i.e.,* whether the evidence is such that an inference of liability might reasonably be drawn from it), *see Jones v. Bernake*, 557 F.3d 670, 679 (D.C. Cir. 2009).  But Defendant here expressly rejects the well-worn and important distinction between the motion to dismiss and summary judgment phases of an employment discrimination action.  (*See* Defs.' Objs. at 10 (complaining that the magistrate judge was mistaken to have determined that Defendant's proffered Rule 56 summary judgment cases are inapposite and stating Defendant's view that, "regardless of whether the Court is evaluating the sufficiency of averments made in a pleading or assertions based upon purportedly undisputed facts, the analysis is the same").)  And, indeed, Defendant's primary and oft-repeated argument with respect to the Report and Recommendation is the contention that it was an error for Magistrate Judge Harvey to credit Plaintiff's claims about disputed factual issues in order to reach the conclusion that liability plausibly lies, when, in Defendant's view, consideration of "the totality of

the circumstances as averred in the Second Amended Complaint" clearly demonstrates the unviability of Plaintiff's claims. (*Id.*; *see also id.* at 11.)

Defendant's troubling insistence that it was "unreasonable" for the magistrate judge to accept the facts as alleged in the complaint and that, instead, the court should have considered the inferences that can be drawn from the totality of the alleged circumstances—*i.e.,* Defendant's refusal to acknowledge that the procedural phase *matters*—is manifest at several points in the written objection brief.  For example, Plaintiff's complaint plainly states that "[b]y September 6, 2011, Dr. Badwal faxed copies of the completed FMLA forms to both his Department Chairwoman and the Human Resources specialist" (Second Am. Compl. ¶ 16), which is relevant to the question of whether or not Badwal actually submitted the necessary paperwork to support his request for leave for the purpose of the FMLA and DCFMLA violations claimed in Counts IV and V, and which, under the motion to dismiss standard, must be accepted as true.  But Defendant's objection responds that Badwal did not, in fact, submit the required FMLA paperwork (Def.'s Objs. at 7 n.4), and that, when viewed in light of the totality of the circumstances alleged in Plaintiff's "own pleadings, it can reasonably be inferred that Plaintiff was terminated because he failed to return the necessary FMLA paperwork" (*id.* at 7 (footnotes omitted)).[3]  And a careful reading of Defendant's objections reveals numerous other examples of this same phenomenon. (*See, e.g.*, *id.* at 11 (arguing that, based on the totality of the complaint's allegations, "there was no basis to infer that the University, by asking about retirement, was

---

[3] Defendant does not offer any precedent or other legal authority for the suggestion that, at the motion to dismiss stage, a court can construe the "totality of the circumstances" alleged in the complaint to be making an averment that directly contradicts the express allegations of the complaint, and this Court is aware of none.

targeting Plaintiff for retirement and/or termination solely because of his age[,]" despite the fact that the complaint says otherwise); *see also id.* at 13 (ignoring the complaint's allegation that Badwal was not given sufficient notice with respect to leave, and arguing that "Plaintiff received notice that his leave was being designated as FMLA leave [r]egardless of the fact that it was labeled 'provisional,' [and] it is clear that Plaintiff fully understood that he was on approved leave and he took all of the leave to which he was entitled"); *id.* at 14 (asserting in clear contrast to the complaint's contentions that, "based upon the total circumstances as pled in the Second Amended Complaint, it is reasonable to infer that Plaintiff's termination was not a direct result of the University's alleged failure to provide notice of FMLA leave designation, but instead a direct result of Plaintiff's inability to return to work").)  These examples underscore how far off base Defendant's arguments are and why this Court is entirely unpersuaded that the magistrate judge erred in the Report and Recommendation.  To the contrary, this Court easily concludes that, because the motion under consideration is one to dismiss the complaint under Rule 12(b)(6) and not a motion for summary judgment under Rule 56, the magistrate judge appropriately assumed the truth of the facts Plaintiff has alleged in light of the claims Plaintiff has brought and reached the well-reasoned conclusion that, with respect to Counts III through VI, those alleged facts satisfy the notice requirements of Rule 8(a) and the plausibility requirements of *Ashcraft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007).

Second, this Court notes that some of the arguments Defendant makes in objecting to the magistrate judge's analysis appear to indicate a fundamental misunderstanding of the Supreme Court's *McDonnell Douglas* burden-shifting

framework and its application at the motion to dismiss stage of employment discrimination cases.  Defendant maintains, for example, that "Plaintiff's own allegations fail to plead a prima facie case of age discrimination" (Def.'s Objs. at 9)—thereby suggesting that Plaintiff must allege facts that establish a prima facie case of discrimination as required under the *McDonnell Douglas* framework in order to survive a Rule 12(b)(6) motion to dismiss.  But no less an authority than the Supreme Court of the United States has explained that the *McDonnell Douglas* test is only an *evidentiary* standard—*i.e.*, it does not by any means displace the notice pleading requirements of Rule 8(a) or otherwise impact the plaintiff's ultimate burden of establishing the essential elements of a discrimination claim—and thus, that a plaintiff need not plead facts that establish a prima facie case in order for the complaint to survive a Rule 12 motion to dismiss.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) ("The prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement."); *see also id.* at 512 ("Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases."); *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) ("At the motion to dismiss stage, the district court cannot throw out a complaint even if the plaintiff did not plead the elements of a prima facie case.").

Thus, Defendant is manifestly incorrect to suggest in the context of the instant motion that Badwal's age discrimination and retaliation claims must be dismissed because the complaint fails to allege sufficient facts to state a plausible *prima facie* case.  (*See* Def.'s Objs. at 9; *see also, e.g.*, Def.'s Mot. to Dismiss, ECF No. 25, at 16 (arguing that Plaintiff has not stated a *prima facie* claim for age discrimination because

he does not allege "that he was replaced by any person, much less a younger person").

As the magistrate judge properly recognized, at the motion to dismiss stage, a plaintiff need only make allegations of fact that, when accepted as true, state a plausible claim for discrimination and retaliation (*see* R. & R. at 7)—and with this standard firmly in mind, this Court agrees with the magistrate judge's conclusions (1) that Plaintiff's complaint fails to state a claim with respect to disability discrimination (Counts I and II), and (2) that the applicable standards are satisfied as far as the complaint's claims of age discrimination, federal and state leave act violations, and breach of contract (Counts III – VI) are concerned.


DATE:  September 28, 2015              *Ketanji Brown Jackson*
                                       KETANJI BROWN JACKSON
                                       United States District Judge

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
**BHAJAN BADWAL,**                      )
                                        )
        **Plaintiff,**   )
      **v.**              )          Civil Action No. 12-2073 (KBJ/GMH)
                                        )
**BOARD OF TRUSTEES**                   )
**OF THE UNIVERISTY OF THE**            )
**DISTRICT OF COLUMBIA,**               )
                                        )
        **Defendant.**   )
_____)

## REPORT AND RECOMMENDATION

       This matter has been referred to the undersigned for a Report and Recommendation on

Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint [Dkt. 25].  For the

reasons stated below, this Court recommends that defendant's motion be granted in part, and

denied in part.

## I.     FACTUAL BACKGROUND

       Plaintiff, Dr. Bhajan Badwal, is a former professor in the Department of Psychology and

Counseling at the University of the District of Columbia (hereinafter "UDC" or "the

University").  Second Amended Complaint [Dkt. 24] (hereinafter "Complaint") at ¶ 6.  During

the time period relevant to the Complaint, the plaintiff was aged 77 to 78 years old.  See id. at ¶

4.  In addition, plaintiff suffered an "ailment which prevented the normal use of his arms[.]"  Id.

at ¶ 21.  The injury required him to keep one arm in a sling.  Id. at ¶ 22.[1]  Plaintiff indicates that

this injury made "dressing himself very difficult," and that "[o]n occasion he would actually not

be able to dress or undress without assistance."  Id. at ¶ 23.  Further, the limitations on the use of

_____

[1] Plaintiff's Complaint is silent as to how he received the injury to his arm.

his arm "often made eating more difficult." Id. at ¶ 24.  The injury also prevented plaintiff from

driving his automobile.  Id. at ¶ 26.  In addition, plaintiff's "doctor required him to keep his arm

elevated, which often made sleeping more difficult." Id. at ¶ 25.  Finally, plaintiff "was not able

to carry many items" to his classroom or elsewhere, id. at ¶ 27, and "he was not able to use his

arms for writing on a chalkboard," id. at ¶ 21.

Due to his injuries, during the spring semester of 2011, Dr. Badwal "became physically

incapable of performing his duties as a full professor and sought sick leave from UDC."  Id. at ¶

7.[2]  Plaintiff notified his Department Chairperson, Dr. Benson Cooke, of his intent to resume his

teaching duties in the fall semester of 2011.  Id. at ¶¶ 9, 18.  In August of 2011, plaintiff's

primary physician, Dr. Violette Grey,[3] advised Dr. Badwal to delay his return to teaching until

September 5, 2011.  Id. at ¶¶ 10, 11.  On August 5, 2011, Dr. Grey wrote a letter to UDC

"requesting a delay of the return of Dr. Badwal until September 5, 2011."  Id. at ¶ 11.  On

August 25, 2011, a manager in UDC's Human Resources office wrote to Dr. Grey, and requested

that she complete certain forms and "provide her opinion as to whether Dr. Badwal needed

reasonable accommodation."  Id. at ¶ 12.  The Complaint does not indicate if, or how, Dr. Grey

responded to the University's inquiry.

On August 26, 2011, a UDC Human Resources Specialist wrote to Dr. Badwal regarding

a request for leave he had made under the Family and Medical Leave Act ("FMLA").  Id. at ¶¶

13, 16.  The letter contained forms for Dr. Badwal to complete and informed him that

"provisional approval" for his absence had been granted.  Id. at ¶¶ 12-13.  The letter also

informed plaintiff that he would "receive notification regarding the final determination of [his]

---

[2] Plaintiff does not indicate the precise date upon which he sought this sick leave.

[3] The Complaint refers to the plaintiff's physician as both "Dr. Grey" and "Dr. Gray."  The Court will refer to
plaintiff's physician as "Dr. Grey" for consistency.

eligibility for FMLA following [his] submitting of the FMLA papers." Id. at ¶ 15.  Plaintiff

alleges that on or by September 6, 2011, he faxed copies of the completed FMLA forms to Ms.

Rogers, the Human Resources Specialist, and to Dr. Cooke, his Department Chairperson.  Id. at ¶

16.  Plaintiff indicates that he sought FMLA leave for the medical treatments of his wife, [4] and

that he and his wife both received medical treatment in Los Angeles, California.  Id. at ¶ 17.

Over the next two weeks, plaintiff regularly telephoned his Department Chairperson and

the UDC Human Resources Specialist to inform them of the progress of his treatments.  Id. at ¶

18.  He further informed them of "his belief that he was rehabbing well enough to return to his

UDC duties full time."  Id. at ¶ 18.  During a phone conversation with Dr. Cooke on September

19, 2011, Dr. Cooke informed plaintiff that he "should no longer notify him about his medical

situation," but that he should send his information to Ms. Rogers in Human Resources.  Id. at ¶

19.  Plaintiff alleges that during the entire fall semester, he continued to keep Ms. Rogers

apprised of his medical condition and treatment by telephone, and further alleges that he faxed

her "every piece of paper he received from his medical providers."  Id. at ¶ 20.  Specifically,

plaintiff indicates that one of his doctors, Richard M. Ress, MD, "informed the University that

[Dr. Badwal] had an ailment which prohibited normal use of his arms and that he was not able to

use his arms for writing on the chalkboard."  Id. at ¶ 21.

According to plaintiff, the University never informed him, in writing or otherwise,

whether a "final determination" had been made regarding his request for FMLA leave.  Id. at ¶

33.  Nor, claims plaintiff, did the University inform him whether he had been granted leave

pursuant to either the federal or DC FMLA.  Id.  Plaintiff further alleges that, "no reasonable

accommodations were ever offered to [him] by Defendant."  Id. at ¶ 32.  According to Dr.

---

[4] The Complaint is silent as to the nature of plaintiff's wife's injuries or ailments.  It is also unclear whether plaintiff sought FMLA leave for both him and his wife, or for his wife alone.

Badwal, he had become accustomed to teaching students through the use of a blackboard and chalk.  Id. at ¶ 28.  He alleges that "[n]either his Department Chairman [n]or anyone else at the University offered him, or even discussed with him, possible alternatives for [him] to perform his job."  Id. at ¶ 32.

In a letter dated November 14, 2011, plaintiff received a notice from UDC indicating that it was "processing his separation from the University."  Id. at ¶ 34.  The letter claimed that the University had not received "documentation to support [his] absence from the University."  Id.  The notice further stated that plaintiff's termination was scheduled for November 15, 2011.  Id. at ¶ 35.  Plaintiff indicates that he received the notice sometime after November 15, 2011.  Id.  In the Complaint, he alleges that "[t]he letter stated that [he] was being terminated because he had not returned his FMLA forms . . . and further that he had otherwise failed to inform UDC of his medical status . . ."  Id. at ¶ 37.  Plaintiff alleges that both factual allegations asserted in the letter are untrue – rather, he claims that he faxed the completed paperwork to the University and generally kept the University apprised of his condition.  Id.

Immediately following receipt of the termination letter, plaintiff called Ms. Rogers at UDC Human Resources to remind her of the information he had provided to the University through her.  Id. at ¶ 40.  Ms. Rogers acknowledged that she had received the information.  Id.  Dr. Badwal then called his health care providers to ensure that each of them had sent the necessary paperwork to UDC.  Id. at ¶ 41.  Shortly thereafter, plaintiff indicates that each of his medical providers either sent or resent the "required information informing the University of the status of Dr. Badwal's health."  Id. at ¶ 41.

In a December 2011 conversation with Ms. Rogers, plaintiff alleges that Ms. Rogers assured him that he had not been terminated.  Id. at ¶ 41.  However, according to plaintiff, Ms.

4

Rogers "also raised and discussed with [Dr. Badwal] that he should consider retiring." <u>Id.</u> at ¶ 42. Plaintiff alleges that, at the time of this conversation, "retirement was not within [his] plans and he was still hopeful that he would be able to return to the classroom that he loved at the University." <u>Id.</u> at ¶ 43. Plaintiff indicates that he had prior conversations "with his former department chair and with other UDC officials" where he had been "questioned about his plans to leave the faculty." <u>Id.</u> at ¶ 44. According to Dr. Badwal, he believes he was being "gently pressured" to retire in these conversations. <u>Id.</u> at ¶ 44. Plaintiff further alleges that one of his colleagues, Dr. George Zacharia, had retired believing that he was forced to do so because of his age. <u>Id.</u> at ¶ 46. Dr. Zacharia indicated to plaintiff that he had also had a number of conversations with UDC officials where he felt "pushed" to retire. <u>Id.</u> at ¶ 45.

After some consideration following their December 2011 conversation, but before the end of the year, plaintiff contacted Ms. Rogers and told her that he would put in his papers for retirement. <u>Id.</u> at ¶ 47. In this conversation, plaintiff alleges he "made clear" to Ms. Rogers that he wanted his retirement to become effective at the end of the 2012 spring semester – that is, some five months later. <u>Id.</u> Plaintiff also claims he informed Ms. Rogers that, in the event he could not return to teaching for the spring semester of 2012, he would like her to apply "the FMLA leave he had not used" and any other leave he had available to the spring 2012 semester. <u>Id.</u> at ¶ 48. Ms. Rogers assured plaintiff that she would inform those in human resources who needed to know of his retirement plans, but that he needed to inform the Department Chair and the Dean of School. <u>Id.</u> at ¶ 49. In a letter dated January 4, 2012, plaintiff "provided his retirement notice to the appropriate officials." <u>Id.</u> at ¶ 50.

According to plaintiff, his "disabilities continued to prevent his return to work." <u>Id.</u> at ¶ 51. On March 9, 2012, Dr. Badwal called Mr. Rogers to ensure that the paperwork was in order

for his retirement at the end of the spring semester.  Id. at ¶ 52.  During this conversation,

plaintiff asserts that he was informed for the first time that he had been terminated from his

position at UDC effective December 31, 2011.  Id. at ¶ 53.  Plaintiff indicates that he "asked Ms.

Rogers if he was terminated because he ran out of sick leave." Id. at ¶ 54.  Ms. Rogers replied

that he had not and that "he still had sick leave."  Id.  Immediately thereafter, Dr. Badwal called

his Department Chairperson, Dr. Cooke.  Id. at ¶ 55.  Dr. Cooke told him that he was surprised to

hear of the termination and that he had not been informed of the termination by anyone else.  Id.

Plaintiff indicates that no one from the Office of the Dean responded to his inquiries regarding

his termination.  Id. at ¶ 56.

The University processed Dr. Badwal's departure from UDC as a "termination" rather

than a "retirement."  Id. at ¶¶ 63-64.  This distinction affects the monthly retirement benefits he

receives.  Id. at ¶ 64.  Further, he is required to pay a "much higher premium" to receive the

same insurance coverage to which he would have been entitled had his departure been processed

as a retirement.  Id. at ¶ 63.

## II.   **PROCEDURAL HISTORY**

Plaintiff filed his first complaint on December 31, 2012.  Complaint [Dkt. 1].  An

amended complaint followed on July 25, 2013.  Amended Complaint [Dkt. 14].  Judge Jackson

granted plaintiff's motion for leave to file a second amended complaint on August 6, 2014.

Minute Order, dated August 6, 2014.  Plaintiff's Second Amended Complaint, the operative

complaint for purposes of this report and recommendation, was filed on September 5, 2014.

Defendant moved to dismiss on September 19, 2014.  See Motion to Dismiss Plaintiff's Second

Amended Complaint [Dkt. 25] (hereinafter "Motion to Dismiss").  Plaintiff filed an Opposition

on November 19, 2014.  See Memorandum of Points and Authorities in Support of Plaintiff's

Opposition to Defendant's Second Motion to Dismiss [Dkt. 28] (hereinafter "Opposition").

Defendant's reply followed on December 15, 2014.  See Defendant's Reply in Support of Its

Motion to Dismiss [Dkt. 30] (hereinafter "Reply").  Judge Jackson referred the motion to dismiss

to the undersigned for a report and recommendation on February 24, 2015.  The motion is now

ripe and ready for review.

## III.   LEGAL STANDARD FOR MOTION TO DISMISS

The defendant moves to dismiss plaintiff's claim, pursuant to Federal Rule of Civil

Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.  Motion to

Dismiss at 1.  When reviewing a motion to dismiss, the Court must assume all facts stated in the

complaint to be true.  Macharia v. U.S., 334 F.3d 61, 65 (D.C. Cir. 2005).  Pursuant to Rule 8 of

the Federal Rules of Civil Procedure, to survive a motion to dismiss, a complaint "must contain .

. . a short and plaint statement of the claim showing that the pleader is entitled to relief . . ." Fed.

R. Civ. P. 8(a)(2).  Under the Supreme Court's rearticulation of pleading requirements in

Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

556-557 (2007), to survive a motion to dismiss, "a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face."  Rollins v.

Wackenhut Servs., Inc., 703 F.3d 122, 129 (D.C. Cir. 2012) (internal citations and quotations

omitted).

Consistent with these principles, a federal court employs a two-pronged approach to

determine whether a complaint's dismissal is warranted.  Iqbal, 556 U.S. at 679.  First, a court

may "choose to begin by identifying pleadings that, because they are no more than conclusions,

are not entitled to the assumption of truth."  Id.  As the Supreme Court has explained, "the tenet

that a court must accept as true all of the allegations contained in a complaint is inapplicable to

legal conclusions." <u>Id.</u> at 678.  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Id.</u>

Second, after identifying any well-pleaded factual allegations, a court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Iqbal</u>, 556 U.S. at 679.  Allegations are plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> at 678.  A court's evaluation of a complaint to determine whether it states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u> at 679.

## IV.   PLAINTIFF'S DISABILITY DISCRIMINATION CLAIMS

Plaintiff asserts claims of disability discrimination under the Rehabilitation Act of 1973 in Count One, and the District of Columbia Human Rights Act ("DCHRA"), in Count Two. Complaint at 9.  The Rehabilitation Act, 29 U.S.C. § 701 <u>et seq.</u>, prohibits discrimination against individuals with disabilities by entities receiving federal financial assistance, including UDC.  29 U.S.C. § 794; <u>Jones v. Univ. of D.C.</u>, 505 F. Supp. 2d 78, 85-86 (D.D.C. 2007) (recognizing a claim under the Rehabilitation Act against UDC).  Due to the substantial similarity between the Rehabilitation Act and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 <u>et seq.</u>, cases interpreting the ADA are equally applicable when analyzing a claim under the Rehabilitation Act.  <u>Jones</u>, 505 F. Supp. 2d at 81 n.1; <u>see</u> <u>also</u> <u>Dave v. Lanier</u>, 681 F. Supp. 2d 68, 73 n.4 (D.D.C. 2010) ("The Rehabilitation Act . . . is to be interpreted coterminously with the ADA.").

The DCHRA makes it unlawful for an employer to refuse to hire, discharge, or otherwise discriminate against an individual "wholly or partially for a discriminatory reason based upon

[an] actual or perceived . . . disability. . . " D.C. Code § 2-1402.11(a)(1).  Employment discrimination claims under the DCHRA are analyzed using the same legal framework as federal employment discrimination claims.  DuBerry v. D.C., 582 F. Supp. 2d 27, 40 (D.D.C. 2008); Grandison v. Wackenhut Servs., Inc., 585 F. Supp. 2d 72, 77 (D.D.C. 2008).  Therefore the Court may consider both of plaintiff's disability discrimination claims under the ADA standard.

A disability discrimination claim can take one of four forms: (1) intentional discrimination, otherwise known as disparate treatment; (2) disparate impact; (3) hostile work environment; or (4) failure to accommodate.  Lee v. D.C., 920 F. Supp. 2d 127, 132-33 (D.D.C. 2013).  Though the Complaint does not specify the form of plaintiff's disability discrimination claim, it can reasonably be read as seeking to state a claim under theories of intentional discrimination and failure to accommodate.

A.  Intentional Discrimination

To state a claim for intention discrimination, a plaintiff must allege facts sufficient to show that he or she (1) had a disability within the meaning of the statute, (2) was qualified for the position with or without a reasonable accommodation, and (3) suffered an adverse employment action because of his or her disability.  Hodges v. D.C., 959 F. Supp. 2d 148, 154 (D.D.C. 2013) (citing Duncan v. Washington Metro. Area Transit Auth., 240 F.3d 1110, 1114 (D.C. Cir. 2001) (en banc)).

For present purposes, the Court is satisfied that plaintiff has sufficiently alleged that he had a disability within the meaning of the relevant statutes to survive a motion to dismiss.  A plaintiff has a disability if he or she (1) suffers from an impairment, (2) the impairment limits an activity that constitutes a major life activity, and (3) the limitation is substantial.  See Gordon v. D.C., 480 F. Supp. 112, 116 (D.D.C. 2007).  According to the ADA Amendments Act of 2008

("ADAAA"), the definition of disability shall be "construed in favor of broad coverage" of

individuals asserting claims under the Act.  42 U.S.C. § 12102(4)(A).[5]  Further, the regulations

promulgated by the Equal Employment Opportunity Council ("EEOC") provide that,[6]

> [t]he primary objective of attention in a case brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability.  The question of whether an individual meets the definition of disability under this part should not demand extensive analysis.

29 C.F.R. § 1630.1(c)(4).

Per the EEOC's regulations, an "impairment" refers to "[a]ny physiological disorder or

condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems . . ."

29 C.F.R. § 1630.2(h).  "Major life activities" include, but are not limited to "caring for oneself,

performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching,

lifting, bending, speaking, breathing, learning, readings, concentrating, thinking, communicating,

interacting with others, and working."  29 C.F.R. § 1630.2(i)(1)(i).  In determining other

examples of major life activities, the term "major" shall "not be interpreted strictly to create a

demanding standard for disability."  29 C.F.R. § 1630.2(i)(1)(ii).  Finally, according to the

regulations, the "substantially limits" requirement, is also to be "construed broadly in favor of

expansive coverage . . ."  29 C.F.R. § 1630.2(j)(1)(i).  The requirement is satisfied where an

---

[5] Prior to 2008, the Supreme Court had interpreted the "substantial" requirement to "create a demanding standard" where an impairment must be of the type that "prevents or severely restricts" the individual from engaging in a major life activity.  See Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195-98 (2002).  The 2008 Amendments overturned this demanding requirement in favor of broad coverage of disabilities under the Act.  See Lytes v. D.C. Water and Sewer Auth., 572 F.3d 939, 936 (D.C. Cir. 2009).

[6] In enacting the ADAAA, Congress expressly delegated authority to the EEOC to issue regulations implementing the definition of disability under the ADA.  42 U.S.C. § 12205a.  Accordingly, the Court must give the EEOC regulations "controlling weight."  Chevron, U.S.A. v. Natural Res. Def. Council, Inc., 497 U.S. 837, 844 (1984) see also Floyd v. Lee, No. 11-CIV-1228, 2015 WL 1501665, at *11 n.24 (D.D.C. Mar. 31, 2015).  Deference to the EEOC regulations is also appropriate when reviewing claims brought under the Rehabilitation Act or DCHRA.  See Schmidt v. Solis, 891 F. Supp. 2d 72, 87-88 (D.D.C. 2012) (Rehabilitation Act); Green v. Am. Univ., 647 F. Supp. 2d 21, 28 (D.D.C. 2009) (DCHRA).

individual's impairment "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii).

As to his impairment, plaintiff alleges that he suffered an "ailment which prevented the normal use of his arms." Complaint at ¶ 21. He further alleges that, "the injury to his arm required that he keep it in a sling." Id. at ¶ 22. As to limitations on major life activities, plaintiff has alleged that the limitations to his arm "often made eating more difficult" and "often made sleeping more difficult." Id. at ¶¶ 24-25. Both eating and sleeping are major life activities. See 29 C.F.R. § 1630.2(i)(1)(i). Further, the Complaint indicates that plaintiff's injury made "dressing himself very difficult" and that "on occasion he would not be able to dress or undress without assistance." Complaint at ¶ 23. "[C]aring for oneself" is also a major life activity, 29 C.F.R. § 1630.2(i)(1)(i), and the ability to dress and undress oneself, in the Court's judgment, is a facet of caring for oneself. Finally, plaintiff alleges that he was "not able to carry many items." Id. at ¶ 27. The EEOC considers "lifting" a major life activity. See 29 C.F.R. § 1630.2(i)(1)(i). The Court considers "lifting" sufficiently analogous, if not synonymous, to "lifting." Accordingly, plaintiff having alleged a limitation on at least four major life activities, the Court is satisfied that he has met this prong of the analysis.[7]

Finally, the Court must determine whether the limitation on a major life activity was substantial. In making this determination, the Court must compare the plaintiff's ability to perform a major life activity to the ability of "most people in the general population." See 29

---

[7] Plaintiff also alleges that his impairment rendered him unable to drive. Complaint at ¶ 26. Notably, driving was generally not considered a major life activity prior to the 2008 Amendments. Kellogg v. Energy Safety Serv. Inc., 544 F.3d 1121, 1126 (10th Cir. 2008); Chenoweth v. Hillsborough Cnty., 250 F.3d 1320, 1329-30 (11th Cir. 2001); Barta v. Sears, Roebuck and Co., 307 F. Supp. 2d 773, 779 (E.D. Va. 2004); but see also Johnson v. D.C., 572 F. Supp. 2d 94, 106 n.6 (D.D.C. 2008) (for the proposition that the D.C. Circuit had yet to resolve the issue of whether driving is a major life activity). The question of whether driving should be considered a major life activity after the 2008 Amendments is currently unclear. See Anderson v. Nat'l Grid, PLC, No. 12-CIV-4422, 2015 WL 1323977, at *11 (E.D.N.Y. Mar. 25, 2015). As plaintiff has asserted an impairment at least four major life activities, the Court need not resolve here whether driving is a major life activity.

C.F.R. § 1630.2(j)(1)(ii).  Importantly, "an impairment need not cause an utter inability to perform a major life activity in order for it to constitute a substantial limitation."  Kapche v. Holder, 667 F.3d 454, 461 (D.C. Cir. 2012) (citing Bragdon v. Abbott, 524 U.S. 624, 641 (1998)).  With this in mind, the Court holds that plaintiff's impairment is substantial.  Indeed, the standard, in light of the ADAAA amendments, should be interpreted generously in favor of plaintiffs.  See Jones v. Nationwide Life Ins. Co., 696 F.3d 78, 87 n.6 (1st Cir. 2012); Gonzalez v. Texas Health & Human Serv. Comm'n, 13-CIV-193, 2014 WL 6606629, at *8 (W.D. Tex. Nov. 19, 2014) (finding that plaintiff was substantially limited in a major life activity where she could not sit for more than 50 minutes at a time).  A member of the general population typically does not find eating difficult and is typically able to dress by themselves.  For plaintiff this is, at least occasionally, not the case.  While plaintiff certainly could have provided more detail as to the nature and extent of the injury to his arm, taking heed of the EEOC's caution not to undertake an extensive analysis, the Court believes plaintiff's allegations of disability are sufficient to withstand a motion to dismiss.

But demonstrating that the plaintiff has a disability does not end the inquiry.  Plaintiff must also demonstrate that he is a "qualified individual" within the meaning of the ADA.  See Brooks v. Clinton, 841 F. Supp. 2d 287, 308 (D.D.C. 2012).  According to the ADA, a "qualified individual" is one whom, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  Thus, an individual who is incapable of performing the essential functions of the desired employment position is not a "qualified individual."  See Baron v. Dulinski, 928 F. Supp. 2d 38, 42 (D.D.C. 2013) (granting defendants' motion to dismiss plaintiff's disability

discrimination claim where plaintiff was "totally disabled" and incapable of performing the essential functions of her job).

It is here that the Court believes plaintiff's claim for disability discrimination fails. Rather than alleging that he was capable of performing the essential functions of his position, with or without a reasonable accommodation, the Complaint makes allegations tending to show the exact opposite – that is, that plaintiff was <u>not</u> capable of performing the essential functions of his job, regardless of potential accommodations.  Specifically, it alleges that "[d]uring the Spring [sic] semester, 2011, Dr. Badwal became physically incapable of performing his duties as a full professor."  Complaint at ¶ 7.  Further, it indicates that during the spring of 2012, "[p]laintiff's disabilities continued to prevent his return to work."  <u>Id.</u> at ¶ 51.  According to the Complaint, Dr. Badwal was accustomed to teaching by using a blackboard and chalk.  <u>Id.</u> at ¶ 29.  This was the method he had used to transmit data to students his entire career and he "received no training in any method which could have replaced his time-tested method of writing on the blackboard." <u>Id.</u> at ¶¶ 30-31.

This conclusion – that plaintiff was incapable of performing the essential functions of his teaching position during the relevant time period – is perhaps somewhat uncomfortable. Exercising its own imagination, the Court certainly believes an individual with an arm injury may nevertheless be able to teach a University course, and therefore be considered a qualified individual for purposes of stating a claim for disability discrimination.  But the Court cannot draw an inference that stands in direct conflict with the facts as alleged in the Complaint, and here, plaintiff makes plain that he was "physically incapable" of performing his teaching duties and that his injuries prevented his return to the classroom.  "[S]ome factual allegations may render success on the merits impossible, and these are also accepted as true."  <u>Public Citizen v.</u>

Clerk, 451 F. Supp. 2d 109, 114 (D.D.C. 2006), aff'd, 486 F.3d 1342 (D.C. Cir. 2007).

Therefore, in spite of the requirement that the Court draw all reasonable inferences in the

plaintiff's favor, some factual allegations will render certain inferences unreasonable.  Even if

the allegation hurts plaintiff's case, the Court must consider the allegation as part of the record

for review.  See Pearson v. D.C., 644 F. Supp. 2d 23, 38-39 (D.D.C. 2009) (finding that plaintiff

had "plead[ed] himself out of court" by alleging that he was speaking in his professional

capacity, where speaking as a private citizen was a requisite element of the plaintiff's First

Amendment claims); see also Browning, 292 F.3d at 242 ("Rule 12(b)(6) dismissal is

appropriate where the allegations contradict the claim asserted"); Sparrow v. United Air Lines,

Inc., 216 F.3d 1111, 1116 (D.C. Cir. 2000).  Here, that is the case.  Plaintiff has "pled himself

out of court" on his intentional disability discrimination claims.

The plaintiff having failed to allege he was a qualified individual for purposes of the

ADA, the Court need not reach the issue of causation.  For the sake of completeness, however,

and as a convenience to the District Court, the Court will address that prong.  It finds the

causation element is sufficiently pleaded.  In an employment discrimination case, the threshold

for pleading facts in support of causation is relatively low, and the court need not undertake a

"full causation analysis" in determining whether plaintiff has stated a claim.  Nurriddian v.

Bolden, 674 F. Supp. 2d 64, 90 (D.D.C. 2009) (citing Brady v. Office of Sergeant at Arms, 520

F.3d 490, 493 nn.1, 2 (D.C. Cir. 2008)); see also Adeyemi v. D.C., 525 F.3d 1222, 1226 n.1

(D.C. Cir. 2011).  Courts in this district have allowed a plaintiff's claim of employment

discrimination to survive a 12(b)(6) motion as long as the complaint supports an inference of

discrimination. See Norris v. Salazar, 885 F. Supp. 2d 402, 421 (D.D.C. 2012); see also Munro v.

LaHood, 839 F. Supp. 2d 354, 361 (D.D.C. 2012).  As long as the complaint provides factual

details regarding the "circumstances, occurrences, and events" underlying the adverse employment action taken against the plaintiff, the complaint need only allege that the plaintiff was subject to disparate treatment because of his status as a member of a protected category." Holmes-Martin v. Leavitt, 569 F. Supp. 2d 184, 191 (D.D.C. 2008).[8]

Admittedly, plaintiff has not advanced many facts to support an inference that he was terminated because of his disability.  He states that "[t]he unlawful actions taken against [him], resulting in his termination for his position with Defendant and other harms, were committed because of Dr. Badwal's disability or perceived disability." Complaint at 9.  Further, he alleges that he was not terminated until he had physical disability.  Indeed, he was not terminated until he told his employer of his disability.  Furthermore, the Complaint indicates that Dr. Badwal's department chair, Dr. Cooke, did not know of Dr. Badwal's termination until Dr. Badwal told him.  Id. at ¶ 55.  This allegation, in the Court's view, lends support for the notion that Dr. Badwal was not terminated based on the merits of his teaching performance.  Had Dr. Badwal's termination been based on his performance as a professor, the Court finds it plausible that Dr. Cooke would have been involved in such a decision, or, at the very least, would have been aware of the decision before the plaintiff informed him.  The Court is, thus, satisfied that plaintiff has alleged sufficient facts to satisfy the causation element for purposes of a motion to dismiss. Regardless, as indicated above, plaintiff's claims for intentional disability discrimination fail

---

[8] Defendant cites to a number of cases concerning employment discrimination at the summary judgment stage where causation analysis occurs under the familiar McDonnell Douglas framework.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  The Supreme Court has made clear, however, that McDonnell Douglas is an evidentiary standard, rather than a pleading standard.  See Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 510 (2002). Therefore, the summary judgment cases cited by defendant are inapposite here.  Further, contrary to the defendant's argument, plaintiff is not required to negate defendant's proffered non-discriminatory explanations for the alleged adverse treatment at the motion to dismiss stage.  Munro, 839 F. Supp. 2d at 363 (citing Rochon v. Gonzales, 438 F.3d 1211, 1219-20 (D.C. Cir. 2006)).  While these factors may come into play during the summary judgment stage or at trial, the only facts before the Court are those alleged in the complaint, and the Court must make its plausibility determination on those facts alone.

because he alleges facts that are inconsistent with his ability to perform the essential functions of his job, with or without accommodations.

    B.  <u>Failure to Accommodate</u>

    Plaintiff's claims for disability discrimination under a theory of failure to accommodate are insufficient as well.  To prevail on a claim for failure to accommodate, the plaintiff must demonstrate that (1) he was a qualified individual with a disability; (2) his employer had notice of his disability; and (3) his employer denied his request for a reasonable accommodation.[9] <u>Ward v. McDonald</u>, 762 F.3d 24, 31 (D.C. Cir. 2014).  As discussed above, plaintiff has failed to allege that he was a "qualified individual" for purposes of stating a disability discrimination claim – his allegations tend to show that he was <u>not</u> capable of performing the essential functions of his position during the time period relevant to his claim.  The Court also finds that plaintiff's claim for failure to accommodate has an additional deficiency: from the face of the Complaint, it does not appear that plaintiff ever requested a reasonable accommodation from his employer.

    As a preliminary matter, the Court is satisfied that plaintiff has sufficiently alleged that his employer had notice of his disability.  A plaintiff is not required to provide "precise notice" of his disability, rather it is sufficient for the employer to know of the "nature and extent" of the plaintiff's impairment.  <u>Woodruff v. LaHood</u>, 777 F. Supp. 2d 33, 40 (D.D.C. 2011).  Plaintiff alleges that he spoke with his Department Chairperson and the UDC Director of Human Resources to regularly inform them of the progress of his treatments.  Complaint at ¶ 18.  He further alleges that he regularly updated Ms. Rogers with information regarding his medical condition and treatments, and that he faxed her every piece of paper he received from his

---

[9] The term "reasonable accommodation" may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities."  42 U.S.C. § 12111(9)(B).

medical providers.  Id. at ¶ 20.  Finally, plaintiff alleges that one of his doctors, Dr. Ress,

specifically informed UDC that he had an ailment which prohibited him from normal use of his

arms, and that he was not able to use his arms for writing on a chalkboard.  Id. at ¶ 21.

Assuming these allegations to be true, it appears clear that UDC was on notice of plaintiff's

disability.

But plaintiff's claim for failure to accommodate breaks down at the next element –

plaintiff has failed to plausibly allege that his employer "denied his request for a reasonable

accommodation."  Ward, 762 F.3d at 31.  While there is no requirement that an employee's

request for an accommodation be in writing or invoke the magic words "reasonable

accommodation," the request must make clear that the employee "wants assistance with his or

her disability" so that he or she may return, or continue, to work.  See Loya v. Sebelius, 840 F.

Supp. 2d 245, 259 n.15 (D.D.C. 2012); see also Evans v. Davis Mem'l Goodwill Indus., 133 F.

Supp. 2d 24, 28 (D.D.C. 2000) ("[w]hat matters under the ADA are not formalisms about the

manner of the request, but whether the employee or a representative of the employee provides

the employer with enough information that, under the circumstances, the employer can be fairly

said to know of both the disability and the desire for an accommodation.")

The parties disagree on whom the burden lies in providing an employee with a reasonable

accommodation.  Defendant argues that plaintiff must have requested an accommodation to state

a claim under a failure to accommodate theory.  Motion to Dismiss at 8-9.  Plaintiff, on the other

hand, argues that an employer has obligation to "initiate an informal, interactive process with the

qualified individual with a disability in need of accommodation."  Opposition at 12 (citing

Mayers v. Laborers' Health & Safety Fund of N. Am., 478 F.3d 364, 369 (D.C. Cir. 2007)).

While plaintiff is correct in that an employer has an obligation to engage in an interactive process

to determine a reasonable accommodation,[10] such an obligation is only triggered where the employee has actually <u>requested</u> a reasonable accommodation.  See <u>Evans</u>, 133 F. Supp. 2d at 28 ("[w]hile plaintiff cites an obligation to engage in an interactive process, with a disabled employee, this obligation is only triggered by an affirmative request.").  The burden lies with the disabled employee to make such a request.  <u>Woodruff v. LaHood</u>, 777 F. Supp. 2d 33, 40 (D.D.C. 2011); <u>Flemmings v. Howard Univ.</u>, 198 F.3d 857, 162 (D.C. Cir. 1999) ("[a]n underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has a requested an accommodation which the defendant-employee had denied.").

Plaintiff never alleged that he requested a reasonable accommodation for his disability.  In fact, the Complaint alleges that in a letter dated August 25, 2011, a manager in UDC's Human Resources department wrote to one of plaintiff's physicians and asked her "to provide her opinion as to whether Dr. Badwal needed a reasonable accommodation."  Complaint at ¶ 12.  The Complaint is silent as to whether, or how, plaintiff's physician responded.  Certainly, where an employer has asked whether an employee was requesting a reasonable accommodation, the employee must allege, at the very least, that he or his doctor responded affirmatively to that inquiry.  Here, the Complaint fails to do so.[11]

In support of its argument that he did request a reasonable accommodation from the University, plaintiff references "Exhibit A" in his Opposition to Defendant's Motion to Dismiss.

---

[10] The EEOC regulations provide: "[t]o determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the individual with a disability in need of the accommodation.  This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3).

[11] The Complaint does alleges that "no reasonable accommodations were offered to Plaintiff by Defendant" and that "[n]either his department chairman or anyone else at the University offered him, or even discussed with him, possible alternatives to properly perform his job." Second Amended Complaint at ¶ 32.  But again, the threshold issue is whether an employee requested an accommodation, not whether an employer offered one.

Opposition at 11.  But plaintiff may not amend his complaint by attaching exhibits to his opposition; indeed, the Court should not consider any new allegations raised in a plaintiff's opposition to a motion to dismiss.  See Perkins v. Vance-Cooks, 886 F. Supp. 2d 22, 29 n.5 (D.D.C. 2012); Coleman v. Pension Benefit Guar. Corp., 94 F. Supp. 2d 18, 24 n.8 (D.D.C. 2000) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss") (internal citations and quotations omitted).  In reviewing a motion to dismiss under Rule 12(b)(6), the Court must look only to the facts alleged on the face of the complaint, attachments to the complaint where such attachments are incorporated by reference in the complaint, and matters subject to judicial notice.  See Ruffin v. Gray, 443 Fed. Appx. 562, 563 (D.C. Cir. 2006).  Having not been attached to the Complaint, nor incorporated therein by reference, the letter may not be considered here.[12]

Finally, considering the Complaint as a whole, it appears clear to the Court that the plaintiff was not attempting to continue working at the University, irrespective of whether he was given a reasonable accommodation.  Rather, the Complaint alleges that plaintiff was seeking leave from the University – that is, he was seeking not to work during the relevant time period. A request to be absent from work for a period of time, even if this request is for medical reasons,

---

[12] The Court has nonetheless reviewed Exhibit A and finds that it does not contain a request for a reasonable accommodation for his disability.  Exhibit A is a letter from Dr. Richard M Ress, MD, to the Chief Human Resources Director at UDC.  The letter reads:

> Dr[.] Badwal has been under my care since October 18, 2011.  His medical condition restricts the use of his right should such that he cannot work with his arm raised above his shoulder level or elevated in any position for a prolonged period of time. This will limit his ability to write on a blackboard.  He may also have difficulty carrying heavy books.

Memorandum in Opposition to re [15] Motion to Dismiss. [Dkt 20-1].  The Court finds that this letter, even if it were properly included as part of plaintiff's Complaint, fails to demonstrate that plaintiff has made a request for a reasonable accommodation.  The letter, while describing Dr. Badwal's condition, fails to request an accommodation for his disability.  Indeed, it appears that is was submitted on the plaintiff's behalf in support of his request for leave from work.

does not equal a request for a reasonable accommodation.  See Scarborough v. Natsios, 190 F.

Supp. 2d 5, 23 (D.D.C. 2002) (a request for leave without pay does not equal a request for a

reasonable accommodation).  At best, the complaint provides a mere possibility that Dr. Badwal

responded to the University's inquiry with a request for an accommodation. Without more, the

Court does not find that plaintiff has met the plausibility standard required to state a failure to

accommodate claim.

Plaintiff having not stated a plausible claim for disability discrimination under either the

intentional discrimination or the failure to accommodate, the Court recommends that plaintiff's

claims of disability discrimination in Counts One and Count Two be dismissed.

## V.   PLAINTIFF'S AGE DISCRIMINATION CLAIMS

In Count Three, plaintiff seeks to state a claim for age discrimination under the DCHRA.

The DCHRA makes it unlawful to discriminate against an individual on the basis of age.  D.C.

Code § 2-1402.11.  When evaluating claims under the DCHRA, the Court may look to cases

interpreting the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et

seq.[13]  See Miller v. Gray, No. 13-CIV-2018, 2014 WL 2932531, at *4, n.1 (D.D.C. June 30,

2014); Wash. Convention Ctr. Auth. v. Johnson, 953 A.2d  1064, 1073 n.7 (D.C. 2008).

To state a prima facie claim for age discrimination under the ADEA or DCHRA, the

plaintiff must show that he or she (1) was at least forty years of age, (2) suffered an adverse

employment action, and (3) that there was some reason to believe that the adverse employment

action was based on the employee's age.  Everson v. Medlantic Healthcare Grp, 414 F. Supp. 2d

77, 82 (D.D.C. 2006).  However, a plaintiff alleging employment discrimination is not required

to plead every element of the prima facie case in order to survive a motion to dismiss under Rule

---

[13] Plaintiff does not bring a claim under the federal ADEA, only the DCHRA.

12(b)(6) as long as the complaint meets the plausibility standard. <u>Jones v. Air Line Pilots Ass'n Inter.</u>, 642 F.3d 1100, 1104 (D.C. Cir. 2011) (citing <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 511 (2002)).

The first element of the <u>prima facie</u> case is clearly satisfied here. Dr. Badwal was aged 77 and 78 during the time period relevant to the complaint. <u>See</u> Complaint at ¶ 4. As for the second element, the parties do not dispute that plaintiff's undesired termination from UDC, as alleged in the Complaint, qualifies as an adverse employment action for purposes of the DCHRA. <u>See</u> Motion to Dismiss at 9-10; Opposition at 18; <u>see also</u> D.C. Code § 2-1402.11(a)(1). As for the causation element, the standard at the motion to dismiss stage is not high, and courts, in this Circuit as elsewhere, rarely require more than an assertion that the plaintiff suffered an adverse action due to his age, so long as this assertion is accompanied by sufficient facts to the put the defendant on notice of the incidences giving rise to the claim. <u>See</u> <u>Blackwell v. SecTek, Inc.</u>, No. 13-CIV-1535, 2014 WL 383494, at *9 (D.D.C. Aug. 5, 2014); <u>Mounts v. United Parcel Serv. of Am., Inc.</u>, No. 09-CIV-1637, 2007 WL 22778004, at *5 (D.D.C. Aug. 31, 2009) (citing <u>Hemsworth v. Quotesmith</u>, 476 F.3d 487, 490 (7th Cir. 2007)); <u>accord</u> <u>Miller v. Insulation Contractors, Inc.</u>, 608 F. Supp. 2d 97, 106 (D.D.C. 2009) ("[b]ecause racial discrimination in employment is a claim upon which relief can be granted under the DCHRA . . . 'I was turned down for a job because of my race' is all a complaint has to state to survive a motion to dismiss under Rule 12(b)(6)) (quoting <u>Potts v. Howard Univ. Hosp.</u>, 258 F. App'x 346, 347 (D.C. Cir. 2007)).

The Court is satisfied that Dr. Badwal has pleaded sufficient facts to survive a 12(b)(6) motion under this relatively low standard. Plaintiff alleges that during the December 2011 conversation with Ms. Rogers of UDC's Human Resources Department, Ms. Rogers assured the

plaintiff that he had not been terminated, but "also raised and discussed with plaintiff that he should consider retiring."  Complaint at ¶ 42.  Further, the plaintiff alleges that "[i]n previous conversations with his department chair and with other UDC officials, [he] had been questioned about his plans to leave the faculty."  Id. at ¶ 43.  The questions were "conducted in such a manner as to lead Dr. Badwal to believe that he was being gently pressured to retire."  Id. at ¶ 44.[14]  In addition, Dr. Badwal indicates that a colleague of his, Dr. Zacharia, had also complained that he felt pressured to retire due to his age.  Id. at ¶¶ 45-46.  Finally, plaintiff alleges that he was the one to tell his Department Chairperson, Dr. Cooke, of his termination.  Id. at ¶ 55.  Again, had Dr. Badwal's termination been based on his performance as a professor, the Court finds it plausible that Dr. Cooke would have been involved in such a decision, or, at the very least, would have been aware of the decision before the plaintiff informed him.  Taken together, these allegations are more than sufficient to satisfy the causation element at the motion to dismiss stage.  Accordingly, the Court recommends that defendant's motion to dismiss plaintiff's claims for age discrimination under the DCHRA, as presented in Count Three, be denied.[15]

---

[14] Defendant argues that "[p]laintiff's allegation that employees at the University discussed retirement with Plaintiff does not give rise to an age discrimination claim."  Motion to Dismiss at 9.  But the cases cited by defendant for this proposition are inapposite here.  Once again, defendant cites cases concerning the motion for summary judgment stage, where the Court typically has a more developed factual record, and where claims are analyzed under the McDonnell Douglas evidentiary framework, rather than the plausibility standard applicable here.  For instance, defendant seeks to support its argument by citing Bhatanger v. Sunrise Senior Living, 935 F. Supp. 2d 1, 6 (D.D.C. 2013).  In Bhatanger, the court granted the employer's motion for summary judgment where an undisclosed manager allegedly told the plaintiff he should retire.  Id.  But in Bhatanger, there was also "sizeable evidence" that plaintiff was performing his job poorly.  Id.  The court then found that the defendant had provided a sufficiently non-discriminatory reason for firing plaintiff and granted defendant's motion.  Id.  Bhatanger does not compel the conclusion that plaintiff's claim in this case must be dismissed.  Aside from being the wrong analytic framework for the present stage of the analysis, the fact that plaintiff was asked about this retirement was one fact among many and hardly the lynchpin of the Bhatanger court's analysis.

[15] Contrary to defendant's argument, the plaintiff is not required to allege that he was disadvantaged in favor of a younger person.  See O'Connor v. Consol. Caterers Corp., 517 U.S. 308, 311-12 (1996).  While identifying a younger, but otherwise similarly situated comparator is a common way to demonstrate causation, see e.g., Spaeth v.

## VI.    PLAINTIFF'S FMLA AND DCFMLA CLAIMS

Plaintiff alleges a violation of the federal Family and Medical Leave Act ("FMLA") in

Count Four and a violation of the D.C. Family and Medical Leave Act ("DCFMLA") in Count

Five of the Complaint.  The federal FMLA allows an "eligible employee"[16] to take twelve weeks

of leave during any twelve-month period due to a "serious health condition"[17] that makes the

employee "unable to perform the functions of her position."  29 U.S.C. § 2612(a)(1)(D).  The

DCFMLA allows an eligible employee to take up to sixteen weeks of leave during any twenty-

four month period due to a serious health condition.  D.C. Code § 32-503(a).  Upon returning

from FMLA or DCFMLA leave, the employee is generally entitled to be restored to the position

he or she left or to an equivalent position.  See 29 U.S.C § 2614(a)(1); D.C. Code § 32-505(d).

### A.  Interference Claim

Under the FMLA or DCFMLA, an employer may be held liable for "interfering" with an

employee's rights under the statute.  See 29 U.S.C. § 2614(a)(1); D.C. Code § 32-507(a).  Such

interference may occur where the employer fails to notify the employee that his or her leave is

designated as FMLA or DCFMLA leave.  Etheridge v. FedChoice Fed. Credit Union, 789 F.

Supp. 2d 27, 39 (D.D.C. 2011) (citing Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 88-

---

Georgetown Univ., 839 F. Supp. 2d 57, 62 (D.D.C. 2012), such a showing is merely sufficient rather than necessary.
See O'Connor, 517 U.S. at 311-32.

[16] An "eligible employee" is one who (1) has been employed by the employer from whom leave is requested for at
least twelve months, and (2) has worked at least 1250 hours in the previous twelve-month period.  29 U.S.C. §
2611(2).  The defendant's Motion to Dismiss does not dispute that Dr. Badwal was an eligible employee under the
FMLA or DCFMLA.  See Motion to Dismiss at 3-4.

[17] The term "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition
that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment
by a health care provider.  29 U.S.C. § 2611(11).  The defendant's Motion to Dismiss does not dispute that Dr.
Badwal had a serious health condition for purposes of the FMLA or DCFMLA.  See Motion to Dismiss at 3-4.

90 (2002)).[18]  Failure to provide notice of the leave designation is not actionable in itself; the employee must also demonstrate that he was prejudiced due to his employer's failure to provide notice.  Roseboro v. Billington, 606 F. Supp. 2d 104, 108 (D.D.C. 2009).  Prejudice "occurs only when the employee has lost compensation or benefits by reason of the violation, sustained other monetary losses as a direct result of the violation, or suffered some loss in employment status remediable through equitable relief."  Id.[19]

Plaintiff's allegations in the Complaint support an inference that the University violated the applicable notice requirements.  The University notified Dr. Badwal that "provisional approval" for his absence had been granted and informed him that he would "receive notification regarding the final determination of [his] eligibility for FMLA following [his] submitting of the FMLA papers."  Complaint at ¶¶ 14-15.  Plaintiff alleges that he returned the paperwork, but was never notified whether a "final determination" had been made or whether he had been granted leave pursuant to the FMLA or DCFMLA.  Id. at ¶¶ 16, 33.  In moving to dismiss the plaintiff's FMLA claims, the defendant argues that it was justified in terminating the plaintiff because the plaintiff failed to return to work after the expiration of his FMLA leave.  Opposition at 3-4.  This argument misses the point.  Plaintiff alleges that he was never informed that he was on FMLA or DCFMLA approved leave, and therefore, would not have known that his absence during the fall semester of 2011 was being counted towards his twelve weeks of FMLA leave or sixteen weeks of DCFMLA leave.  The defendant's alleged failure to provide plaintiff notice of the leave

---

[18] The FMLA regulations, as promulgated by the Department of Labor ("DOL"), detail the rights and obligations of employers and employees under the Act.  See 29 C.F.R. § 825.  The D.C. Municipal Regulations do the same for the local statute.  See D.C. Mun. Reg. tit. 4 § 1613.14.

[19] The plaintiff is required to demonstrate prejudice because the statutory cause of action, under both the federal and local statute, provides for compensatory damages and injunctive relief, but does not provide for punitive damages. See 29 U.S.C. § 2617(a); D.C. Code § 29-2617.

designation states an interference claim under the FMLA and DCFMLA provided that prejudice is pleaded as well. Etheridge, 789 F. Supp. 2d at 39.

Here, the plaintiff has adequately plead that he suffered prejudice due to the University's failure to notify him of his leave designation.  Plaintiff was terminated from his position with the University for failure to return to his teaching position after his FMLA leave expired.  Such a termination is indisputably an adverse employment action, remediable by compensatory damages or injunctive relief.  It appears plausible to the Court that plaintiff failed to return to his teaching position due to his ignorance that his leave was being designated as FMLA or DCFMLA leave. Without knowledge that his leave was designated as FMLA or DCFMLA leave, plaintiff would have been unaware that his leave was counting against the limited number of weeks of leave provided by those statutes.  Therefore, the Court believes that plaintiff has plausibly stated an interference claim under both the federal FMLA and the DCFMLA.

  B.  Retaliation Claim

The FMLA, as well as the DCFMLA, also provides a cause of action for retaliation against employees who have exercised their rights under the statute.  See 29 U.S.C. § 2615(a)(2); D.C. Code § 32-507(b); see also Kasten v. Saint-Gobain Performance Plastics Corp., 131 S. Ct 1324, 1333 (2011) (referring to section 2615(a)(2) as an "antiretaliation provision.").[20]  As the prima facie elements of a retaliation claim under the FMLA are the same as those under the DCFMLA, the Court will analyze the two counts simultaneously.  See Green v. Intersolutions, Inc., No. 07-CIV-298, 2007 WL 1656280, at *2 (D.D.C. June 6, 2007).  The prima facie elements are that the employee (1) engaged in a protected activity for purposes of the statute; (2) suffered an adverse employment action, and (3) that the protected activity and the adverse

---

[20] But see also Gleklen v. Democratic Cog. Campaign Comm., 199 F.3d 1365, 1367-68 (D.C. Cir. 2000) (finding an FMLA retaliation claim pursuant to subsection 2615(a)(1)).

employment action were causally connected.  Gordon v. U.S. Capitol Police, 778 F.3d 158, 161 (D.C. Cir. 2015) (federal FMLA); Alford v. Providence Hosp., 945 F. Supp. 2d 98, 105 (D.D.C. 2013) (DCFMLA).  However, as with employment discrimination claims, the plaintiff need not plead each of these elements in order to survive a motion to dismiss under Rule 12(b)(6) as long as the Court finds the plaintiff's claim to relief plausible.  See Gordon, 778 F.3d at 161.

In any event, the plaintiff has sufficiently pleaded all the prima facie elements of a FMLA and DCFMLA retaliation claim.  First, the act of taking FMLA leave, or even attempting to take FMLA leave, is considered protected activity for purposes of the statute.  See Franklin v. Pepco Holdings, Inc., 875 F. Supp. 2d 66, 73 (D.D.C. 2012).  Dr. Badwal, upon filling out the FMLA paperwork and seeking to take FMLA leave, was therefore engaged in statutorily protected activity.  Second, as discussed above, plaintiff's involuntary termination clearly satisfies the adverse employment action element.  See also Baird v. Gotbaum, 662 F.3d 1246, 1248-49 (D.C. Cir. 2011).  Finally, a plaintiff may demonstrate causation is by showing a close temporal proximity between the employee's protected conduct and the adverse employment action taken by the employee.  See Roseboro, 606 F. Supp. 2d at 109; Gleklen, 199 F.3d at 1368.  In this Circuit, the alleged retaliatory acts must have occurred within three or four months of the protected activity to establish causation by temporal proximity.  See Allen v. Napolitano, 774 F. Supp. 2d 186, 201 n.1 (D.D.C. 2011).

The Court finds that the relevant actions by both parties in this case fall close enough together to establish the requisite temporal proximity.  The complaint alleges that plaintiff submitted his FMLA leave forms to the defendant "by September 6, 2011."  Complaint at ¶ 16. The defendant first notified the plaintiff that it was processing his separation from the University in a letter on November 14, 2011.  Id. at ¶ 34.  These events occurred just over two months apart.

Therefore, the Court finds that the plaintiff has alleged a sufficient causal link to withstand a motion to dismiss his FMLA and DCFMLA claims. See Gustave-Schmidt v. Chao, 360 F. Supp. 2d 105, 118-19 (D.D.C. 2004) (referring to three months as the "outer limit" of the temporal proximity requirement). Accordingly, the Court recommends that defendant's motion to dismiss Count Four and Count Five of the Complaint should be denied.[21]

## VII.   PLAINTIFF'S BREACH OF CONTRACT CLAIM

The final claim in the Complaint – Count Six – is for breach of contract.  In general, to state a claim for breach of contract, a complaint must allege (1) that a contract existed, (2) that plaintiff performed its contractual obligations, (3) that defendant breached the contract, and (4) that plaintiff suffered damages due to the breach. Squires v. Brown, 604 F. Supp. 2d 236, 238 (D.D.C. 2006).  However, to state a claim for breach of contract so as to survive a Rule 12(b)(6) motion to dismiss, it is enough for the plaintiff to describe the terms of the alleged contract and the nature of the defendant's breach. Burnett v. Am. Fed. Gov't Employees, No. 13-CIV-2047, 2015 WL 1826152, at *5 (D.D.C. Apr. 22, 2015) (citing Nattah v. Bush, 605, F.3d 1052, 1058 (D.C. Cir. 2010)).

Here, plaintiff alleges that he "had a contractual relationship with Defendant Board of Trustees" and that "by its treatment of Plaintiff, Defendant breached its contractual promises to him."  Complaint at ¶¶ 57-58.  Plaintiff alleges he was damaged by the breach because he suffered decreased retirement benefits and increased insurance premiums as a result of defendant's decision to terminate him in violation of his contract with UDC. Id. at ¶¶ 63-64. While, admittedly, plaintiff could have provided more information about his contractual

---

[21] At a later stage in the proceedings, whether upon a summary judgment motion or at trial, the defendant may, of course, be able to present evidence of a non-retaliatory reason for terminating plaintiff. See Alford, 945 F. Supp. 2d at 108 (for the proposition that the McDonnell Douglas evidentiary framework applies to retaliation claims under the FMLA and DCFMLA).

relationship with the defendant and the nature of the breach, the Court finds that these allegations are sufficient to put the defendant on notice of the nature of plaintiff's contract claim.  Indeed, the pleading standard for a breach of contract claim is not high, and there is no requirement that a plaintiff attach a copy of the underlying contract to his complaint.  See Smith v. Washington Post Co., 962 F. Supp. 2d 79, 87 (D.D.C. 2013).  The complaint, read as a whole, provides the defendant sufficient notice of plaintiff's claim that his undesired termination was a breach of his employment contract.

Defendant argues, however, that plaintiff has not sufficiently alleged a breach of an employment contract specifically.  Motion to Dismiss at 10.  Defendant is correct that, in the District of Columbia, employment is presumed to be terminable by will by either party at any time.  Stevens v. Sodexo, 846 F. Supp. 2d 119, 125 (D.D.C. 2012) (citing Casco Marina Dev., LLC v. District of Columbia Redev. Land. Agency, 834 A.2d 77, 83 (D.C. 2003)).  However, this presumption may be rebutted upon allegations that the parties intended termination to be subject to specific preconditions, such as termination only for cause.  Daisley v. Riggs Bank, N.A., 372 F. Supp. 2d 61, 69-70 (D.D.C. 2005).

The Court finds it plausible, on the face of the Complaint, that plaintiff's employment contract with the University was something other than an at-will employment contract.  It is widely understood that a professor with tenure is not an at-will employee, but rather, can only be fired for cause.  See e.g., Katz v. Georgetown Univ., 246 F.3d 685, 688-89 (D.C. Cir. 2001); Kakaes v. George Washington Univ., 683 A.2d 128, 134 (D.C. 1996); Browzin v. Catholic Univ. of America, 527 F.2d 843, 846 (D.C. Cir. 1975).  The complaint alleges that plaintiff had worked for the University, or its predecessor institutions, for 42 years and that he "had reached the status of full professor" on or about 2002.  Complaint at ¶¶ 1, 6.  The Court believes these allegations

give rise to the reasonable inference that Dr. Badwal had tenure.  The terms "full professor" and "tenured professor, while perhaps not wholly synonymous, are often used interchangeably, and a professor's designation as a "full professor" is, at the very least, evidence of his status as a tenured professor.  See Brown v. Sessoms, 774 F.3d 1016, 1019 (D.C. Cir. 2014); Cobb v. Howard Univ., 70 App. D.C. 339, 342 (D.C.Cir. 1939); Edinger v. Bd. of Regents of Morehead State Univ., 906 F.2d 1136, 1141 (6th Cir. 1990).   These assumptions – that Dr. Badwal's status as a full professor, with 42 years of employment with the University, indicates that he had tenure, and that as a tenured professor he could only be fired for cause – may, of course, prove to be wrong.  For purposes of reviewing a 12(b)(6) motion, however, the Court finds its plausible that plaintiff has a claim against the University for breach of contract.  Therefore, the Court recommends that defendant's motion to dismiss plaintiff's claim for breach of contract, as found in Count Six of the Complaint, be denied.

## VIII.   CONCLUSION

For the foregoing reasons, this Court recommends that defendant's motion to dismiss should be granted as to Count One and Count Two, and should be denied as to Count Three, Count Four, Count Five, and Count Six.

Failure to file timely objections to the findings and recommendations set forth in this report may waive your right of appeal from an order of the District Court adopting such findings and recommendations.  See Thomas v. Arn, 474 U.S. 140 (1985).

Date:   July 20, 2015

_____
G. Michael Harvey
United States Magistrate Judge